**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ELIZABETH KATHRYN HALL,

Plaintiff,

Case No. 8:26-cv-02148-MSS-NHA

v.

DEVEN NESHAUN PERSAUD,

Defendant, in his individual capacity.
______________________________________/

## FIRST AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff Elizabeth Kathryn Hall, by and through her undersigned counsel, sues Defendant Deven Neshaun Persaud (hereafter at times "Defendant Persaud") in his individual capacity and alleges:

## PARTIES, JURISDICTION, AND VENUE

1. This civil-rights action arises under 42 U.S.C. § 1983 and the First and Fourth Amendments to the United States Constitution, as applied to the States through the Fourteenth Amendment. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4). Plaintiff seeks attorney's fees under 42 U.S.C. § 1988. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred in Polk County, Florida.

2. Plaintiff Elizabeth Kathryn Hall is and was at all times relevant and material herein an adult citizen of the United States and a resident of Polk County, Florida.

3. Defendant Persaud at all times relevant and material herein was a duly appointed police officer employed by the City of Auburndale and assigned to the Auburndale Police Department in Auburndale, Florida. He is sued solely in his individual capacity. At all times set forth herein, Defendant Persaud acted under color of Florida law and invoked police authority when he stopped, detained, used force against, arrested, and caused the prosecution of Plaintiff.

**STATEMENT OF FACTS**

4. This civil-rights action arises from an unlawful traffic stop, warrantless arrest, excessive force, and ensuing criminal prosecution that Defendant Persaud caused by deliberately or recklessly fabricating material facts. Plaintiff's contemporaneous vehicle video and other evidence contradict his material account of the driving and physical encounter.

5. Defendant Persaud claimed that Plaintiff drove erratically, repeatedly braked harshly, nearly caused a collision, refused lawful commands, pulled away, kicked him, scratched him, and intentionally struck or touched him. Plaintiff and her Tesla video contradict the material driving claims, and Plaintiff did not kick, scratch, strike, batter, or violently resist Defendant Persaud.

6. After the State Attorney received and reviewed the Tesla video, the State entered a nolle prosequi. A second Auburndale Police Department internal-affairs investigation separately sustained findings that Defendant Persaud made untruthful sworn and recorded statements and knowingly included inaccurate material information in his report and probable-cause affidavit.

7. On September 5, 2025, at approximately 8:23 p.m., the Polk County Sheriff's Office communications center received a traffic complaint concerning a gray Tesla near Polk City Road, Dickey Road, C. Fred Jones Boulevard, and the Polk Parkway.

8. Plaintiff Elizabeth Kathryn Hall was driving a gray Tesla Model 3 bearing Georgia license plate CML9989.

9. Defendant Persaud reported that he located the Tesla near Polk City Road and William Van Fleet Road, followed it onto C. Fred Jones Boulevard from approximately two car lengths behind, and turned off his running lights and headlights to observe its driving.

10. Defendant Persaud reported that, while traveling about 45 miles per hour, the Tesla slammed on its brakes to about 30 miles per hour; that Plaintiff slowed abruptly on four occasions; that the braking was harsh; that he had to maneuver to avoid a collision; and that no other vehicles were present.

11. Those claimed personal observations were material to Defendant Persaud's decision to stop Plaintiff, and he later used them to justify the detention, arrest, and prosecution.

12. The Tesla's contemporaneous video contradicts Defendant Persaud's account. It depicts two brief brake-light activations, not four harsh-braking events; no evasive maneuver by Defendant Persaud; other passenger and commercial vehicles in the area; properly signaled lane changes; and no observed traffic violation before the stop.

13. The video timeline shows the Tesla traveling from the area of State Road 559 and William Van Fleet Road westbound onto C. Fred Jones Boulevard. Plaintiff signaled her lane changes, and the stop began at approximately timestamp 0:19:34.

14. Based on the dispatch information communicated to Defendant Persaud, the circumstances he personally observed, and the totality of the circumstances, excluding his fabricated observations, Defendant Persaud lacked reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a traffic violation or crime. Nor did those facts provide arguable reasonable suspicion because no objectively reasonable officer could believe that they established a particularized, objective basis for the stop.

15. Defendant Persaud nevertheless initiated the traffic stop near C. Fred Jones Boulevard and William Van Fleet Road, activated his emergency lights, approached the Tesla, issued commands, moved to the driver's side, and directed Plaintiff to exit the car.

16. At the scene, Defendant Persaud told members of Plaintiff's family that Plaintiff had driven properly and used her turn signals, directly contradicting the material driving assertions he later placed in his report and sworn affidavit.

17. In his report and sworn probable-cause affidavit, Defendant Persaud asserted that Plaintiff refused commands, tensed her hands, pulled away, kicked him, scratched him, and intentionally touched or struck him.

18. Those assertions were false. Plaintiff did not kick, scratch, strike, batter, or violently resist Defendant Persaud, and she committed no offense supplying probable cause for arrest.

19. Plaintiff did not flee, threaten Defendant Persaud, possess a weapon, or present facts from which an objectively reasonable officer could infer that she had committed resisting an officer with violence, battery on a law-enforcement officer, or any other offense.

20. Before Plaintiff exited the Tesla, she peacefully questioned why she was being stopped, criticized Defendant Persaud's conduct in following her at night without his car headlights turned on, told him that his conduct made her afraid, and

requested that a supervisor respond. She held her mobile phone so that she could communicate with her family or document the encounter if necessary. Her words and conduct were non-threatening and did not physically obstruct Defendant Persaud.

21. Defendant Persaud became visibly angry immediately after Plaintiff questioned his conduct and requested a supervisor. Without a warrant, consent, or exigent circumstances, he reached into the Tesla and forcibly snatched and seized Plaintiff's mobile phone from her hands, interfering with her ability to communicate or document the encounter. Although Plaintiff was unarmed, nonviolent, compliant, and not resisting, Defendant Persaud removed her from the Tesla, forcefully twisted her arms behind her, spun and slammed her against the vehicle, pushed her toward the rear of the Tesla, and applied handcuffs with painful force.

22. During the physical encounter and his handling of the handcuffs, Defendant Persaud struck his own hand or wrist against the handcuffs and sustained minor abrasions. He later falsely attributed those abrasions to Plaintiff scratching or kicking him.

23. Defendant Persaud arrested Plaintiff and caused her to be transported and booked on felony charges of resisting an officer with violence, in alleged violation of section 843.01, Florida Statutes, and battery on a law-enforcement

officer under section 784.03, Florida Statutes, as reclassified by section 784.07(2)(b), Florida Statutes.

24. At 8:39 p.m. (20:39:48), Defendant Persaud reported over county dispatch radio that there was 'one detained.' More than ten minutes later, he first reported over radio the alleged violent resisting and battery conduct that he then used to support the felony charges.

25. Defendant Persaud prepared, swore to, and submitted a probable-cause affidavit and related narrative containing the false statements described above for the purpose and foreseeable effect of obtaining legal process and initiating and maintaining the prosecution.

26. On or about September 6, 2025, while Plaintiff remained in custody, a judicial officer reviewed Defendant Persaud's sworn probable-cause affidavit at Plaintiff's initial appearance conducted pursuant to Florida Rules of Criminal Procedure and made a probable-cause determination, set a cash bond on the felony charges, and ordered that Plaintiff remain detained unless and until the bond was posted. The judicial determination and bond order were based materially on Defendant Persaud's false affidavit. Following that judicial process, Plaintiff remained incarcerated until cash bond was posted and the jail completed her release. After removing the false assertions and including the material facts Defendant Persaud omitted, the affidavit did not establish probable cause for either charge.

27. Plaintiff was confined in the Polk County Jail for approximately 24 hours. During booking and detention, she was fingerprinted, subjected to a DNA swab and drug screen, required to disrobe and change clothing within view of others, and denied access to her prescribed daily medication. Jail personnel also refused to allow her parents to deliver that prescribed medication.

28. After her release on cash bond, Plaintiff was legally compelled to appear in the criminal case under threat of bond forfeiture and issuance of a capias. She was required to retain a criminal-defense attorney and pay the fees and costs necessary to defend the felony charges until the prosecution ended.

29. After an initial internal-affairs matter, was closed while the criminal charges remained pending, the Auburndale Police Department opened a second investigation. The second investigation sustained findings of untruthfulness and report falsification, found a lack of probable cause for the arrest, and concluded that Defendant Persaud would have been terminated had he not resigned.

30. Auburndale Police Chief Storie acknowledged, that Plaintiff did nothing wrong, that Defendant Persaud slammed her against the car, and that Defendant Persaud put her in jail when she should not have been jailed.

31. On or about April 2, 2026, Plaintiff's criminal-defense counsel delivered a USB drive containing the Tesla video to the State Attorney's Office. The prosecuting attorney reviewed the footage on April 6, 2026.

32. On April 17, 2026, at a mandatory docket call, the State announced in open court that the charges would be nolle prossed. The State formally filed the written Nolle Prosequi on April 23, 2026, ending the criminal case without a conviction, plea, or compromise by Plaintiff.

33. Before the arrest, Plaintiff was an active nationally and internationally competitive water-ski athlete, a Team USA athlete who had earned multiple gold, silver, and bronze medals in international competition, a Pan American Championship medalist, a U.S. Masters competitor, and a Moomba Masters competitor in Australia. She was also an active member of USA Water Ski & Wake Sports and the International Waterski & Wakeboard Federation, as well as a coach and professional adviser with existing competition, sponsorship, and professional opportunities.

34. The pending violent felony charges materially impaired Plaintiff's ability to pursue domestic and international training, competition, travel, and professional opportunities. The charges created visa, entry, character-review, and background-screening obstacles and caused Plaintiff to cancel, forgo, or lose athletic and professional opportunities while the prosecution remained pending.

35. Plaintiff lost athletic opportunities, sponsorship opportunities, and professional relationships as a direct and foreseeable result of the stop, arrest, detention, and prosecution. She also incurred criminal-defense attorney's fees,

related defense costs, travel-related losses, and other out-of-pocket expenses as consequential damages.

36. The public felony accusations and resulting publicity harmed Plaintiff's reputation and exposed personal identifying information, causing unwanted telephone calls, messages, and visits near her home.

37. Plaintiff suffered loss of liberty, physical pain in her arms and wrists associated with Defendant Persaud's force and handcuffing, emotional distress, fear, humiliation, trauma, loss of independence, loss of enjoyment of life, social withdrawal, and other compensable injuries.

38. The injuries alleged in the preceding paragraphs were directly, foreseeably, and substantially caused by Defendant Persaud's unconstitutional acts.

39. Defendant Persaud's retaliatory escalation, use of force against a nonviolent and non-resisting person, deliberate or reckless fabrication of material facts, and use of those fabricated facts to cause felony charges were intentional, malicious, and undertaken with reckless or callous indifference to Plaintiff's federally protected rights.

## COUNT I
## 42 U.S.C. § 1983 - FIRST AMENDMENT RETALIATION AGAINST DEFENDANT PERSAUD

40. Plaintiff incorporates and re-alleges paragraphs 1 through 39 as if fully set forth herein.

41. Plaintiff engaged in speech protected by the First Amendment when she peacefully questioned the reason for the stop, criticized Defendant Persaud's conduct in following her at night without headlights, and requested that a supervisory law-enforcement officer respond. Her speech did not physically interfere with Defendant Persaud's duties and did not constitute fighting words, a true threat, or any other category of unprotected speech.

42. Defendant Persaud subjected Plaintiff to adverse actions that would deter a person of ordinary firmness from engaging in protected speech by forcibly snatching and seizing her phone, using physical force against her, handcuffing and arresting her, causing her incarceration, and initiating felony charges through his report and sworn probable-cause affidavit.

43. At the time of the adverse actions, Defendant Persaud lacked probable cause to arrest Plaintiff for any offense. Nor did arguable probable cause exist because no objectively reasonable officer could believe that the facts known to Defendant Persaud supported probable cause for any offense. Plaintiff's peaceful verbal questions, criticism, and request for a supervisor did not constitute resisting or obstructing an officer without violence under section 843.02, Florida Statutes, or any other offense.

44. Defendant Persaud displayed immediate anger and hostility in response to Plaintiff's protected speech and escalated the encounter immediately thereafter.

That close temporal proximity, his later fabrication of material facts, and the absence of probable cause support the inference that Plaintiff's protected speech was the but-for cause of the adverse actions. Absent Plaintiff's protected speech, Defendant Persaud would not have taken her phone, used force against her, arrested her, or caused the felony prosecution. Defendant Persaud induced the prosecution by submitting fabricated facts material to the charging and probable-cause decisions. Persaud's immediate anger upon Plaintiff's speech; his fabrication of the violent conduct he attributed to her; the more-than-ten-minute gap between his "one detained" radio report and his first report of any violent conduct.

45. At the time of the events, it was clearly established that a person may peacefully question and criticize police conduct and request a supervisor, and that an officer may not arrest or otherwise punish that person in retaliation for protected

46. As a direct and proximate result of Defendant Persaud's retaliatory conduct, Plaintiff suffered the injuries and damages alleged above, including the attorney's fees and costs she incurred in defending the criminal charges until they were dismissed.

**COUNT II**
**42 U.S.C. § 1983 - UNLAWFUL TRAFFIC STOP**
**FOURTH AMENDMENT - AGAINST DEFENDANT PERSAUD**

47. Plaintiff incorporates and re-alleges paragraphs 1 through 39 as if fully set forth herein.

48. Defendant Persaud seized Plaintiff within the meaning of the Fourth Amendment when he activated his emergency lights, stopped the Tesla, and detained her. At the moment of the stop, the totality of the facts known to Defendant Persaud, including the dispatch information and excluding facts he invented, did not supply reasonable suspicion of a traffic violation, impaired driving, or other criminal activity. Nor did those facts supply arguable reasonable suspicion because no objectively reasonable officer could believe that they warranted the stop.

49. Defendant Persaud did not stop the Tesla in reliance on the dispatch complaint alone. He instead located the Tesla and deliberately followed it, with his lights off, for the specific purpose of observing its driving before deciding whether to stop it. During that period he observed Plaintiff drive properly, signal her lane changes, and commit no traffic violation, as he later admitted at the scene to members of Plaintiff's family. Whatever suspicion the dispatch complaint might otherwise have supported was dispelled by Defendant Persaud's own observation of lawful driving before he initiated the stop, and the only observations he later offered to justify the stop were fabricated.

50. An officer cannot create reasonable suspicion by knowingly or recklessly fabricating personal observations, and it was clearly established at the time that a vehicle stop unsupported by objective facts creating at least reasonable suspicion violates the Fourth Amendment. Defendant Persaud's false claims of

repeated harsh braking, erratic driving, and collision avoidance cannot supply a lawful basis for the stop, and no reasonable officer in his position could believe the stop was lawful.

51. Defendant Persaud acted intentionally, knowingly, or with reckless disregard for Plaintiff's federally protected rights.

52. As a direct and proximate result of the unlawful stop and the detention preceding the arrest, Plaintiff suffered loss of liberty, fear, humiliation, emotional distress, and the other damages alleged above.

**COUNT III**
**42 U.S.C. § 1983 - FALSE ARREST**
**FOURTH AMENDMENT - AGAINST DEFENDANT PERSAUD**

53. Plaintiff incorporates and re-alleges paragraphs 1 through 39 as if fully set forth herein.

54. Defendant Persaud seized Plaintiff by arresting, handcuffing, transporting, and causing her to be booked.

55. At the time of arrest, Defendant Persaud lacked probable cause to believe Plaintiff had violated section 843.01, section 843.02, or sections 784.03 and 784.07(2)(b), Florida Statutes, or any other law. Nor did arguable probable cause exist because no objectively reasonable officer could believe that the facts known to Defendant Persaud established probable cause for any offense.

56. Plaintiff did not refuse a lawful command, obstruct Defendant Persaud, pull away, kick, scratch, strike, batter, threaten, flee from, or violently resist him. Defendant Persaud knew those material allegations were false. Nor did Plaintiff's peaceful verbal questions, criticism, and request for a supervisor constitute resisting or obstructing an officer without violence under section 843.02, Florida Statutes, or any other offense.

57. After removing Defendant Persaud's material false statements and including the material truth, the remaining facts do not establish probable cause for either charged offense or any other offense. Nor could an objectively reasonable officer believe that those remaining facts supplied arguable probable cause.

58. Even if the initial traffic stop were assumed lawful solely for purposes of this count, the facts alleged supplied no probable cause for the arrest and no objectively reasonable officer could believe that arguable probable cause existed. Defendant Persaud observed no traffic violation before the stop, and he did not arrest Plaintiff for, or cite her with, any traffic offense.

59. It was clearly established that a warrantless arrest requires probable cause and that an officer may not obtain or defend an arrest by knowingly or recklessly fabricating the conduct constituting the offense. No reasonable officer in Defendant Persaud's position could believe the arrest was lawful.

60. Defendant Persaud acted intentionally, knowingly, or with reckless disregard for Plaintiff's federally protected rights.

61. The false arrest and pre-process detention proximately caused Plaintiff's loss of liberty, physical restraint, handcuffing-related pain, humiliation, emotional distress, jail-related harms, and the other damages alleged above.

**COUNT IV**
**42 U.S.C. § 1983 - EXCESSIVE FORCE**
**UNREASONABLE MANNER OF SEIZURE UNDER THE FOURTH AMENDMENT**
**AGAINST DEFENDANT PERSAUD**

62. Plaintiff incorporates and re-alleges paragraphs 1 through 39 as if fully set forth herein.

63. At the time Defendant Persaud used the force described in paragraph 21 above, Plaintiff was unarmed, nonviolent, compliant, not fleeing, not threatening anyone, and not actively resisting. Defendant Persaud did not need the challenged force to overcome resistance, prevent flight, protect anyone, or obtain compliance.

64. The challenged force was objectively unreasonable, gratuitous, punitive, and disproportionate to any legitimate law-enforcement need. This excessive-force claim is independent of the lawfulness of the stop or arrest and would remain viable even if the stop or arrest were assumed lawful solely for purposes of this count.

65. The force was not incidental to a routine handcuffing. It was applied to a person offering no resistance, served no legitimate law-enforcement purpose, and caused Plaintiff physical pain in her arms and wrists. It was precipitated by Defendant Persaud's own escalation of the encounter in response to Plaintiff's protected speech rather than by any conduct of Plaintiff. Following the internal-affairs investigation, Auburndale Police Chief Storie acknowledged that Defendant Persaud slammed Plaintiff against the car and that Plaintiff did nothing wrong.

66. At the time of the events, it was clearly established that an officer may not use gratuitous and substantial force by forcefully slamming an unarmed, non-threatening, compliant, and non-resisting person against a vehicle, painfully twisting her arms, and applying handcuffs with painful force when no such force is needed.

67. Defendant Persaud acted intentionally, knowingly, or with reckless disregard for Plaintiff's federally protected rights.

68. As a direct and proximate result of Defendant Persaud's excessive force, Plaintiff suffered pain in her arms and wrists, fear, humiliation, emotional distress, trauma, and the other damages alleged above.

**COUNT V**
**42 U.S.C. § 1983 - MALICIOUS PROSECUTION**
**UNREASONABLE SEIZURE PURSUANT TO LEGAL PROCESS**
**FOURTH AMENDMENT - AGAINST DEFENDANT PERSAUD**

69. Plaintiff incorporates and re-alleges paragraphs 1 through 39 as if fully set forth herein.

70. Defendant Persaud instituted and caused the criminal prosecution of Plaintiff by preparing, swearing to, and submitting a probable-cause affidavit and arrest narrative that knowingly or recklessly misstated material facts and omitted material facts known to him concerning the traffic stop and physical encounter, causing Plaintiff to be charged with resisting an officer with violence, in alleged violation of section 843.01, Florida Statutes, and battery on a law-enforcement officer under section 784.03, Florida Statutes, as reclassified by section 784.07(2)(b), Florida Statutes.

71. After deleting Defendant Persaud's false statements and adding the material facts he omitted, the corrected affidavit did not establish probable cause for resisting an officer with violence or battery on a law-enforcement officer. Each unsupported felony charge independently caused or continued Plaintiff's post-process detention and cash-bond order. Any unrelated traffic infraction, even if assumed, would not supply probable cause for either felony charge or justify the legal-process seizure those charges caused.

72. Defendant Persaud acted with malice and for a purpose other than bringing Plaintiff to justice, as shown by his deliberate or reckless fabrication of material facts, his anger at Plaintiff's protected speech, and his use of those fabricated facts to initiate and maintain felony charges.

73. Plaintiff's post-process seizure would not otherwise have been justified without the constitutionally infirm legal process because no truthful facts established probable cause for either felony charge or for any other offense that caused the seizure.

74. The criminal proceeding terminated in Plaintiff's favor when the State announced the nolle prosequi in open court on April 17, 2026, and formally filed the written Nolle Prosequi on April 23, 2026. The case ended without a conviction, plea, or compromise by Plaintiff.

75. At the time of the events, it was clearly established that an officer may not procure or maintain a seizure pursuant to legal process by intentionally or recklessly including material false statements in, or omitting material facts from, a probable-cause affidavit. No reasonable officer in Defendant Persaud's position could believe his conduct was lawful.

76. The prosecution and post-process seizure proximately caused Plaintiff to incur criminal-defense attorney's fees and costs, incarceration and jail-related harms, court-appearance and bond burdens, lost athletic, sponsorship, and

professional opportunities, reputational injury, emotional distress, humiliation, loss of enjoyment of life, and the other damages alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

a. enter judgment for Plaintiff and against Defendant Persaud on each of Counts I through V;

b. award compensatory, nominal, and special damages in an amount to be determined by the jury, including damages for loss of liberty, physical pain, emotional distress, reputational injury, lost economic, athletic, and professional opportunities, criminal-defense attorney's fees and costs as consequential damages, and other proven losses, without double recovery;

c. award punitive damages against Defendant Persaud in his individual capacity in an amount sufficient to punish him and deter similar misconduct;

d. award Plaintiff the reasonable attorney's fees and taxable costs incurred in this civil action pursuant to 42 U.S.C. § 1988; and

e. grant such other relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury on every issue so triable.

DATED: September 1, 2026.

Respectfully submitted,

/s/ William M. Powell
WILLIAM M. POWELL, ESQUIRE
Florida Bar No. 343994
POWELL LAW OFFICES, P.A.
2256 First Street, Suite 226
Fort Myers, Florida 33901
Telephone: (239) 540-3333
Email: william@lawinfo.pro

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 1, 2026, I electronically filed the foregoing with the Clerk of Court through CM/ECF, which will send notice of electronic filing to all counsel of record, including Jordan D. Howlette, Esquire, counsel for Defendant Deven Neshaun Persaud.

/s/ William M. Powell
William M. Powell, Esq.